# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
### WESTERN DIVISION

FILED
97 JUL 18 PH 3: 42
U.S. DISTRICT COURT
N.D. OF ALABAMA

| | |
|---|---|
| ERLENE CHANDLER, individually and on behalf of all those similarly situated, | ] ] ] ] |
| Plaintiff(s), | ] CV 96-N-0453-W |
| vs. | ] ] |
| CHEVRON CHEMICAL COMPANY, INC., et al., | ] ] ] |
| Defendant(s). | ] |



ENTERED
JUL 18 1997

| | |
|---|---|
| ERLENE CHANDLER, individually and on behalf of all those similarly situated, | ] ] ] ] |
| Plaintiff(s), | ] CV 96-N-0823-W |
| vs. | ] ] |
| GENERAL ELECTRIC COMPANY, | ] ] |
| Defendant(s). | ] |

260

**JANET MINSHALL, et al.,**        ]
                                   ]
    Plaintiff(s),                     ]
                                   ]
    vs.                               ]        CV 97-N-0168-W
                                   ]
**CHEVRON CHEMICAL**               ]
**COMPANY, et al.,**               ]
                                   ]
    Defendant(s).                     ]

### Memorandum of Opinion

### 1.    Introduction

These state law products liability actions were all originally filed in federal court. The first of these suits, CV-96-N-453-W, was filed on February 22, 1996, in the Northern District of Alabama. In that action the plaintiff, Erlene Chandler, filed a class action complaint against Chevron Chemical Company, Inc. (Chevron); Plexco/Spirolite, a division of Chevron; and Inter-City Products, Inc. (Inter-City). On June 12, 1996, Chevron filed a Crossclaim against Inter-City and a Third Party Complaint against 29 third party defendants. On December 20, 1996, the court granted Ms. Chandler leave to amend her complaint to withdraw her class allegations. Subsequently, Chevron dismissed its third party complaint.

On April 1, 1996, Ms. Chandler filed CV-96-P-0823-W against General Electric (GE) in the Northern District of Alabama, alleging substantially the same causes of action as in her previous suit. Her two actions were consolidated in this court on June 3, 1996.

2

On August 16, 1996, Janet Minshall and Free S. Polazzo filed a class action complaint (1:96-CV-2065-WBH) in the Northern District of Georgia against Chevron and General Electric, making substantially the same claims as had Ms. Chandler. On December 4, 1996, Chevron filed a Third Party Complaint in that action against the same companies it had named in the *Chandler* case. On January 21, 1997, Judge Willis B. Hunt, on motion of GE, transferred the *Minshall* action to the Northern District of Alabama pursuant to 28 U.S.C. § 1404(a).

Presently, the court has for consideration the Motion to Dismiss filed by Chevron on April 26, 1996, and joined by GE on June 7, 1996, and the Motion to Dismiss filed by Inter-City on May 13, 1996. The motions will be treated as applicable to all three complaints in their present form. For the reasons stated below, the motions will be granted in part and denied in part.

## 2.    **Allegations of the Complaints**

For present purposes, the court accepts the allegations of the complaints as true. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). According to the complaints, in the 1980s, Chevron began manufacturing, distributing and marketing high temperature plastic vent pipe under the brand names "Plexvent" and "Plexvent/Spirolite," commonly used to vent heating appliances such as boilers, furnaces, and water heaters and installed primarily with heating appliances having an efficiency rating of between 78 and 88 percent -- so called mid-efficiency heating appliances. Plexvent and Plexvent/Spirolite were made from a plastic known as polyetherimide, which was developed, manufactured, and distributed by GE under the trade name "ULTEM".

3

The complaint alleges that when either Plexvent or Plexvent/Spirolite is used to vent high temperature flue gasses produced by mid-efficiency gas appliances, it is defective in that it is prone to crack and prematurely fail. The plaintiffs allege this deterioration represents a "long term safety hazard in that carbon monoxide in the flue gasses may leak into living spaces, causing personal injury and death."

On December 23, 1993, Erlene Chandler installed in her home in Douglasville, Georgia a Comfortmaker gas heating system manufactured by Inter-City. In the spring of 1993, Ms. Minshall and Mr. Polazzo installed a gas heating system in their home in Atlanta, Georgia. The contractors in both instances used Plexvent, as approved by the respective manufacturers, to vent the flue gasses.

Sometime after the spring of 1994, Canadian government officials banned further installation of Plexvent pipe in Canada after a significant number of failures of the pipe. When they did so, they cited the safety hazards associated with this pipe due to premature failure and cracking. On September 12, 1995, the Province of Ontario required all homeowners with defective vent pipe to remove the piping and correct their heating systems. On July 18, 1994, Inter-City notified its sales personnel that because of issues relating to safety, the company was withdrawing its approval for use of Plexvent and other high temperature plastic vent pipe with its mid-efficiency furnaces. The complaint alleges that, to date, Chevron and Plexco have never acknowledged that Plexvent is defective.

The complaint in the *Minshall* case (CV-97-N-168-W), filed against Chevron and General Electric, alleges: 1) Breach of a Continuing Duty to Warn; 2) Negligence; 3) Fraudulent Suppression; 4) Strict Liability; and 5) Intentional, Reckless, or Negligent

4

Misrepresentation. The complaint in CV-96-N-453-W, is the complaint initially filed by Ms. Chandler against Chevron and Inter-City. It alleges the following claims against Chevron and Plexco: 1) Breach of Continuing Duty to Warn; 2) Negligence; 3) Fraudulent Suppression; 4) Strict Liability; and 5) Breach of Implied Warranty. Against Inter-City the complaint alleges: 1) Breach of a Continuing Duty to Warn; 2) Negligence; and 3) Breach of Implied Warranties. The complaint in CV-96-N-823-W was filed against General Electric alone. It alleges: 1) Breach of a Duty to Warn; 2) Negligence; 3) Fraudulent Suppression; and 4) Strict Liability. None of the complaints allege that actual physical injury has already occurred.

## 3. **Discussion**

The defendants having withdrawn their Rule 12(b)(2) motion to dismiss for want of personal jurisdiction, the court now need address only their contention under Rule 12(b)(6) that the plaintiffs fail to state a claim upon which relief may be granted.

### a. **Standard**

For purposes of ruling on a motion to dismiss, the court must take the allegations of the complaint as true and construe them in a manner most favorable to the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). A complaint should not be dismissed for failure to state a claim unless "it appears beyond doubt that the plaintiff can prove no set of facts . . . which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). A complaint may be dismissed when the allegations demonstrate that the plaintiff does not have a claim. *Bruce v. Wade*, 537 F.2d 850, 852 (5th Cir. 1976); *Hepperle v. Johnston*, 544 F.2d 201, 202 (5th Cir. 1976).

5

### **b.   Applicable Law**

A federal court sitting in diversity must apply the general common law of the state within which it sits. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938). The *Erie* doctrine also means that a federal court must apply the choice of law rules of the state in which it sits in determining whether that state's or some other state's substantive law should apply. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941). Since *Erie* also applies to state statutes of limitations, "a federal court is ordinarily bound to look to the choice of law rules of the state in which it sits to determine whether the state courts of that state would apply their own state's statute of limitations or the statute of limitations of some other state." *Ellis v. Great Southwestern Corp.*, 646 F.2d 1099, 1102-1103 (5th Cir. 1981); *see Guaranty Trust Co. of N.Y. v. York*, 326 U.S. 99 (1945).

Here, the court must apply the above principles to *Chandler, et al. v. Chevron, et al.*, CV-96-N-0453-W; *Chandler, et al. v. General Electric Company*, CV-96-N-0823-W, originally filed in this court--the United States District Court for the Northern District of Alabama; and *Minshall, et al. v. Chevron, et al.*, CV-97-N-0168-W, originally filed in the United States District Court for the Northern District of Georgia. The Fifth Circuit has noted that "[c]omplications arise . . . when (as here) the case has been transferred to the court that must apply these propositions from another federal court in a different state." *Ellis*, 646 F.2d at 1103. The Eleventh Circuit has said

> [t]he transferee court must apply the law of the state in which the transferor court sits. This principal clearly applies to conflicts between statutes of limitations. As the Supreme Court has stated

6

> in cases . . . where the defendants seek transfer, the transferee
> district must be obligated to apply the state law that would
> have been applied if there had been no change of venue. A
> change of venue under § 1404(a) generally should be, with
> respect to state law, but a change of courtrooms.

*McVicar v. Standard Insulations, Inc.*, 824 F.2d 920, 921 (11ᵗʰ Cir. 1987) (quoting *Van Dusen v. Barrack*, 376 U.S. 612 (1964)) (citations omitted). Therefore, this court must treat the claims arising under the *Minshall* portion of this case as if the court were sitting in Georgia. In Georgia, "the lex loci governs as to all substantive matters" while the law of the forum state governs procedure. *Green v. Johnson*, 32 S.E.2d 443 (Ga. App. 1944); *see also Risdon Enters., Inc. v. Colemill Enters., Inc.*, 324 S.E.2d 738, 740 (Ga. App. 1984); *Lines v. Miles Labs., Inc.*, 887 F.2d 1576, 1578 n.6 (11ᵗʰ Cir. 1989) ("In tort actions, Georgia courts look to the law of the state where the injury was incurred."). The cause of action for both *Chandler* and *Minshall* accrued in Georgia. Accordingly, for the action which was originally filed in the Northern District of Georgia, Georgia law provides both the substantive tort law as well as the statute of limitations.

For that portion of this action filed by Ms. Chandler in the Northern District of Alabama, this court must apply Alabama choice of law rules. *Klaxon,* 313 U.S. at 487. In Alabama, like in Georgia, the rule of *lex loci delicti* mandates that courts apply the substantive law of the place where the tort occurred, while applying the procedural law of the forum state. *Alabama Great So. R.R. v. Carroll*, 11 So. 803 (Ala. 1892). Accordingly, for Ms. Chandler's claims, Georgia substantive law will apply while the applicable Alabama statute of limitations will apply.

### c.    Statute of Limitations

The defendants contend that the plaintiffs' negligence, strict liability, and failure to warn claims are time barred. *Chevron's Brief* at 16. For the *Minshall* claims, the court must apply the relevant Georgia Statute of Limitations. Since the complaints do not allege that the plaintiffs have suffered actual physical injury,[1] the plaintiffs seek redress for damage to personalty only. In Georgia, the statute of limitations for the breach of duty to warn,[2] negligence, and strict liability actions causing damage to personalty alone is four years. O.C.G.A. § 9-3-31. Thus, the *Minshall* claims will be barred by the passage of time unless they have been brought within four years from the date on which they first accrued.

The plaintiff in *Minshall* claims that "[i]n the spring of 1993, plaintiffs had a [Plexvent] heating system installed in their home in Atlanta, Georgia." *Minshall Complaint* at 6. The causes of action could not have accrued before that date. The complaint was filed on August 16, 1996, in the Northern District of Georgia approximately three and one-half years after the earliest date on which the claims could have first accrued. They are timely.

Next the court must consider the tort claims contained in the *Chandler* cases -- the complaints filed in Alabama. The applicable Alabama statute of limitations applies to these claims. In Alabama, "[a]ll actions for any injury to the person or rights of another not arising from contract and not specifically enumerated in any other section of Code of Ala.

---

[1]  The plaintiffs claim damages only for "risk of personal injury."

[2]  The parties do not dispute that in Georgia, a claim for failure to warn may be based on negligence or strict liability. O.C.G.A. § 51-1-11; *see, e.g., McCurley v. Whitaker Oil Co.*, 388 S.E.2d 412, 413 (Ga. App. 1989). In this case, the plaintiff has asserted failure to warn claims under both theories.

1975, title 6, Chapter 2, must be brought within 2 years." Timothy Hoff, *Limitations of Actions and Notice Provisions* 156 (2d ed. 1992) (citing Ala. Code § 6-2-38(l)). The statute begins to run "from the time the cause of action 'accrues.' The cause of action 'accrues' as soon as the party in whose favor it arises is entitled to maintain an action thereon." *McWilliams v. Union Pac. Resources Co.*, 569 So.2d 702 (Ala. 1990). In other words, "[t]he time when the limitation begins to run is the date when the injury or damage first occurs, not the date of the act that eventually causes the injury or damage." Hoff, *supra* at 156 (citing *Kelly v. Shropshire*, 75 So. 291 (Ala. 1917)); *see also Alabama Power Co. v. Cummings*, 466 So. 2d 99 (Ala. 1985) ("In actions such as this, the plaintiff's cause of action accrues, and the statute of limitations begins to run, when the defendant's negligence causes the damage complained of."); *Smith v. Medtronic, Inc.*, 607 So. 2d 156, 158 (Ala. 1992).

Although in Alabama, the so called "discovery rule" normally only applies to fraud actions,[3] the Alabama Supreme Court has held that even in negligence and wantonness actions "'an action for damages to *land* accrues, for limitations purposes, upon *discovery* of the first actionable injury.'" *Rumford v. Valley Pest Control*, 629 So.2d 623 (Ala. 1993) (quoting *McWilliams*, 569 So.2d at 704) (emphasis in original). Ms. Chandler claims that "[s]he did not discover the dangerous condition until sometime in January, 1996." *Chandler Supplemental Submission* at 2. Accordingly, taking the plaintiffs' allegations as true, Ms. Chandler's tort claims are not time barred.

---

[3] *Henson v. Celtic Life Ins. Co.*, 621 So. 2d 1268, 1274 (Ala. 1993) (citing Ala. Code § 6-2-3).

9

## d.    Economic Loss Rule

The defendants next contend that "[U]nder the Georgia law applicable to this case,

the tort claims alleged in the complaint cannot be maintained for the purely economic loss

claimed by the plaintiff." *Chevron's Brief in Support of Motion to Dismiss* (hereinafter,

*Chevron's Brief)* at 12. This so called "economic loss rule" has been explained thusly:

> When there is no accident involving injury or physical damage, and the only
> loss is an economic one, such as loss of value or use of the property or the
> cost of repairing it, these losses are not compensable elements in a tort
> action, and the only remedy for the pecuniary damages suffered is in
> contract.

Charles R. Adams, III and Cynthia T. Adams, *Georgia Law of Torts* (1996) (citing *Vulcan*

*Materials Co. v. Driltech, Inc.*, 306 S.E.2d 253 (Ga. 1983); *Long v. Jim Letts Oldsmobile,*

*Inc.*, 217 S.E.2d 602 (Ga. App. 1975)). The rule essentially "prevents recovery in tort when

a defective product has resulted in the loss of the value or use of the thing sold, or the cost

of repairing it." *Bates & Assocs., Inc. v. Romei*, 426 S.E.2d 919, 921 (Ga. App. 1993). "The

rule does not prevent a tort action to recover for injury to persons or to property other than

the product itself, because the duty breached in such situations generally arises

independent of the contract." *Bates*, 426 S.E.2d at 921. One of the first Georgia cases to

discuss this rule was *Long v. Jim Letts Oldsmobile, Inc.*, 217 S.E. 2d 602 (Ga. App. 1975).

In *Long*, the plaintiff brought an action against the manufacturer and seller of an

automobile for damages to the vehicle arising from defects in the engine. *Id.* at 602.

Specifically, Mr. Long alleged that "the engine was 'running hot and blowing out the liquid

in the radiator,' and that he took the car back to the seller on several occasions and that

neither the seller not the manufacturer repaired or corrected the problem, and that this

10

condition persisted throughout his ownership." *Id.* The plaintiff contended the engine was

completely destroyed after 22 months and 27,000 miles of use, and that he sold the car for

much less than its "book value." *Id.* at 602-603. In his suit, Mr. Long claimed damages for

expenses for repairs not covered by warranty, time lost from work, loss of use of the car

during repair periods, diminution in value, inconvenience, and punitive damages. *Id.* at

603. The trial court granted summary judgment to the defendants and Long appealed. *Id.*

On appeal the Georgia Court of Appeals noted:

> It is well settled that misfeasance in the performance of a contractual
> duty may give rise to a tort action. But in such cases the injury to the plaintiff
> has been 'an independent injury over and above the mere disappointment of
> plaintiff's hope to receive his contracted for benefit.' '(I)n order to maintain
> an action ex delicto because of a breach of duty growing out of a contractual
> relation the breach must be shown to have been a breach of a duty imposed
> by law and not merely the breach of a duty imposed by the contract itself.'
> 'The duty, for a breach of which an action ex delicto lies, must be a duty
> imposed by law as to some relationship, general or special, as applied to that
> class of cases where the alleged duty arises out of a contract. For instance,
> if one promises to pay another a given sum of money by a named day, the
> contract creates a duty to pay; but a breach of that duty is not a tort.'

*Id.* at 604 (citations omitted). The court held that the duties of the manufacturer and seller

arose solely under the contract and therefore an action in tort could not lie. *Id.*

Specifically, the court held:

> In the present case, the duty of the manufacturer was to produce a car
> that would not overheat. The duty of the seller-repairman was to fix the car
> so that it would not overheat. These duties arose, in both cases, solely from
> the contract between the plaintiff, Long, and these two defendants. The
> breach of that duty (which is the only duty alleged to have been breached)
> amounts only to a breach of the contractual duties of the defendants. There
> may have been other duties owed by the defendants to Long, which arose
> independent of the contracts, such as the duty imposed on suppliers and
> repairmen of chattels to use reasonable care not to place in the hands of the
> consumer a 'product which may reasonably be expected to be capable of

11

inflicting substantial harm if it is defective.' However, Long's complaint does not assert that such a duty has been breached by the defendants, nor has he submitted any evidence that he has suffered 'substantial harm' within the meaning of the products liability rule. The 'harm' contemplated or the interest protected against by such rule is 'bodily harm,' injury to 'life and limb,' injury to others and damage to property other than the product itself.

*Id.*

In 1983, the Georgia Supreme Court confirmed the existence of the so called "accident exception" to the economic loss rule. *Vulcan Materials Co. v. Driltech, Inc.*, 306 S.E.2d 253, 257 (Ga. 1983). "[T]he accident exception . . . allows a plaintiff to recover in tort when there is a sudden and calamitous event that not only causes damage to the product but poses an unreasonable risk of injury to persons and other property." *Advanced Drainage Sys., Inc. v. Lowman*, 437 S.E.2d 604 (Ga. App. 1993) (citing *Vulcan Materials*, 306 S.E.2d at 257). In addition, Georgia courts have recognized a "misrepresentation exception" to the economic loss rule. *See Robert & Co. Assocs. v. Rhodes-Haverty Partnership*, 300 S.E.2d 503 (Ga. 1993); *Bates & Assocs., Inc. v. Romei*, 426 S.E.2d 919, 922-23 (Ga. App. 1993). "But, where there exists no accident [or misrepresentation], and no physical damage to other property, and the only loss is a pecuniary one, through loss of the value of the thing sold, or the cost of repairing or modifying it, the courts adhere to the rule that purely economic interests are not entitled to protection against mere negligence, and accordingly deny recovery." *Bates*, 426 S.E.2d at 922.

The claims sound both in contract and tort. In CV-97-N-168-W, filed against Chevron and General Electric, the plaintiffs allege: Breach of a Continuing Duty to Warn (Count I); Negligence (Count II); Fraudulent Suppression (Count III); Strict Liability (Count IV); and

Intentional, Reckless, or Negligent Misrepresentation (Count V). CV-96-N-453-W, the initial complaint filed by Ms. Chandler against Chevron and Inter-City, contains the following counts against Chevron and Plexco: Breach of Continuing Duty to Warn (Count I); Negligence (Count II); Fraudulent Suppression (Count III); Strict Liability (Count IV); and Breach of Implied Warranties (Count V). Against Inter-City the complaint alleges: Breach of a Continuing Duty to Warn (Count VI); Negligence (VII); and Breach of Implied Warranties (Count VIII). The complaint in CV-96-N-823-W was filed against General Electric alone. It alleges: Breach of a Continuing Duty to Warn (Count I); Negligence (Count II); Fraudulent Suppression (Count III); and Strict Liability (Count (IV). In deciding under which of these theories the plaintiffs may recover, the court must first examine the purported injuries to determine whether they are purely economic in nature. The plaintiffs may not recover in tort for those that are purely economic, except through a theory of liability for which Georgia provides for a specific exception.

### i. Risk of Serious Injury

The plaintiffs claim that the economic loss rule does not bar their claims because their claim is based in part on "the real, substantial and immediate risk of personal injury created by the defective pipe." *Plaintiff's Response* at 17. If Georgia law allows this theory of recovery, the plaintiffs claim that "risk of personal injury" constitutes personal injury compensable despite the applicability of the economic loss rule. In support of their argument, the plaintiffs cite the court to decisions where federal courts from other circuits have applied the "risk of personal injury" exception to the economic loss rule in asbestos cases.

13

The plaintiffs first cite the court to *City of Greenville v. W.R. Grace & Co.*, 827 F.2d 975 (4th Cir. 1987). In *Greenville,* the defendant, a manufacturer and supplier of a fireproofing material called Monokote, supplied the material to the City of Greenville, South Carolina, for application to the steel beams of the new Greenville City Hall. *Id.* at 976. Although asbestos-free Monokote had been available for approximately six months, Grace supplied Greenville with the Monokote containing asbestos. *Id.* After Greenville sued Grace on a negligence theory, Grace contended that because the city had suffered only economic loss, it should be barred from recovery. *Id.* at 976-77. The Fourth Circuit held that, even though no personal injury had yet occurred, "South Carolina courts would be willing to extend tort liability to the manufacturer whose product threatens a substantial and unreasonable risk of harm *by releasing toxic substances into the environment*, thereby causing damage to the property owner who has installed the harmful product in his building." *Id.* at 978 (emphasis added).

In *Tioga Pub. Sch. Dist. No. 15 of Williams County, State of N.D. v. United States Gypsum Co.*, 984 F.2d 915 (8th Cir. 1993), the Eighth Circuit held that North Dakota would take a similar approach. In that case, the Tioga Public School District No. 15 (Tioga) brought suit seeking to recover the cost of removing an acoustical plaster known as Audicote from two schools in its district. *Id.* at 915. United States Gypsum Co. (USG) manufactured Audicote which contained asbestos. *Id.* The school district showed that Audicote in its schools was "friable," or "able to be crumbled, pulverized, or reduced to powder by hand pressure." *Id.* at 915 (citing 40 C.F.R. § 763.83). In addition, Tioga showed that asbestos had actually been released. *Id.* at 919. The Eighth Circuit held that

14

"[t]he asserted injury here is not simply an injury to the Audicote or to the school buildings; rather, the injury is the contamination of the Tioga school buildings by asbestos and the consequent health risk to the buildings' occupants." *Id.* at 918. The court further reasoned that "the fact that none of the buildings' occupants has yet been shown to have a health problem attributable to asbestos [should not] serve as a bar to recovery." *Id.* at 919.

In *Roseville Plaza Ltd. Partnership v. United States Gypsum Co.*, 811 F. Supp. 1200 (E.D. Mich. 1992), *aff'd*, 31 F.3d 397 (6th Cir. 1994), the district court determined that a defendant who designed, manufactured, and sold a fireproofing material containing asbestos could be sued in tort, despite the economic loss rule. *Id.* at 1204. Notably, the court mentioned that the material at issue had suffered bonding failures, causing it to fall to the floor and released dust which caused asbestos fibers to become airborne. *Id.* at 1202.

Lastly, in *Morris v. Osmose Wood Preserving*, 667 A.2d 624 (Md. 1995), the plaintiffs purchased homes with Osmose treated plywood in them. *Id.* at 638. The plywood was treated with a chemical that caused it to begin an acidic reaction when exposed to high temperatures. *Id.* at 628. The reaction was intended to stop the spread of fires, but it was alleged that such a reaction could occur at much lower temperatures, weakening the wood. *Id.* The court specifically noted that the plaintiffs "allege[d] in their amended complaint that the plywood in plaintiffs' roofs has undergone this reaction, 'significantly weakening the roofs and resulting in substantial impairment of the strength and structural integrity of the roofs in which it is incorporated.'" *Id.* Although Maryland does recognize the "substantial risk of injury" exception to the economic loss rule, the Maryland Court of

15

Appeals affirmed the trial court's dismissal and held that the alleged defects did not establish such a risk. *Id.* at 633.

After reviewing the plaintiffs' submission and the cases cited, the court is not persuaded that, even if Georgia adopted "substantial risk of injury" as a cause of action, the instant case would qualify for treatment under such a theory. In each case cited by the plaintiffs, the court dealt with the present or past release of toxic substances into the environment. Here, however, the complaints do not allege the actual release of any dangerous or toxic substance into the plaintiffs' homes. In fact, the plaintiffs admit that none of the vent pipe in question has yet failed. *Plaintiff's Response* at 16. The plaintiffs, before any such failure, may guard against future personal injury by replacing the vent pipe which they claim is defective by reason of its proclivity to fail. Accordingly, even if this court were to determine that the Supreme Court of Georgia would adopt the "risk of personal injury" theory put forth in the asbestos cases, here the theory does not apply because there has not yet been any failure. Therefore, any claims the plaintiffs have for damages for "risk of personal injury" are due to be dismissed.[4]

---

[4] Inter-City cites the court to *Boyd v. Orkin Exterminating Co., Inc.*, 381 S.E.2d 295 (Ga. App. 1989), *rev'd on other grounds*, 446 S.E.2d 741 (Ga. App. 1994), for the proposition that the Georgia Court of Appeals has rejected this cause of action outright. However, that is not the case. In *Boyd*, the plaintiffs contended that exposure of the plaintiffs to toxic chemicals caused them to suffer neurological injuries. *Id.* at 296. The plaintiffs wished to be compensated not for "increased risk of cancer" alone, but for increased risk of cancer in connection with actual physical injury already sustained. *Id.* Importantly, the case involved not a motion to dismiss, but an appeal from summary judgment. *Id.* The court of appeals held not that the plaintiffs could not make out a cognizable claim for increased risk of cancer, but instead that the evidence fell "far short" of the standard required to survive summary judgment. *Id.* at 298. Accordingly, the court is not prepared to hold, based on *Boyd*, that risk of future injury is not a cognizable claim in the State of Georgia.

16

### ii. Damages to Other Property

The plaintiffs next allege that the rule does not apply because "the defective vent pipe has been incorporated into [their] home and cannot be removed without damage to the surrounding structure." *Plaintiff's Submission* at 18. It is true that "[t]he rule does not prevent a tort action to recover for injury to persons or to property other than the product itself, because the duty breached in such situations generally arises independent of the contract." *Bates,* 426 S.E.2d at 921.

While there is no Georgia case law on point on the question of whether damages caused by removal of defective property amount to damage to "other property" is within the exception to the economic loss rule, the Eleventh Circuit has dealt with this issue. In *Pulte Home Corp. v. Osmose Wood Preserving, Inc.*, 60 F.3d 734 (11th Cir. 1995), the Eleventh Circuit, interpreting Florida law, held that a homeowner who purchased defective plywood for his roof, could not recover for the necessary costs associated with removing and replacing other portions of the roof, in order to remove the defective plywood. *Id.* at 742. Specifically, the court held that "[a]lthough [the plaintiff] did replace roof components other than the FRT plywood, these components were not replaced because they were damaged. Rather, replacing the shingles and other materials was merely a consequence of replacing the damaged FRT plywood." *Id.* at 142. The court based its decision on Florida case law which specifically held that "economic loss includes the costs of replacing the defective product." *Id.* (citing *Casa Clara Condominium Ass'n, Inc. v. Charley Toppino & Sons, Inc.*, 620 So. 2d 1244, 1246 (Fla. 1993)).

17

The court is convinced that the Georgia Supreme Court would decide this issue the same way the court in *Pulte* did. In Georgia, economic loss includes the "loss of value or use of the property or the cost of repairing it." Charles R. Adams, III and Cynthia T. Adams, *Georgia Law of Torts* (1996) (citing *Vulcan Materials Co. v. Driltech, Inc.*, 306 S.E.2d 253 (Ga. 1983)); *Long v. Jim Letts Oldsmobile, Inc.*, 217 S.E.2d 602 (Ga. App. 1975)). In addition, the Georgia Court of Appeals has cited with approval a definition of economic loss as cost of replacement. *Henderson v. General Motors Corp.*, 262 S.E.2d 238 (Ga. App. 1979) (citing *Alfred N. Koplin & Co., Inc. v. Chrysler Corp.*, 364 N.E.2d 100, 103 (Ill. App. 1977)). In the instant case, like in *Pulte,* the cost of repair and replacement of the defective pipe includes whatever damage to the homes that may occur. Accordingly, consistent with Georgia law and persuasive Eleventh Circuit precedent, the plaintiffs' damages are nothing more than economic loss for which they may not recover in tort.

### iii.    The Misrepresentation Exception

The misrepresentation exception to the economic loss rule provides that

> one who supplies information during the course of his business, profession, employment, or in any transaction in which he has a pecuniary interest, has a duty of reasonable care and competence to parties who rely upon the information in circumstances in which the maker was manifestly aware of the use to which the information was to be put and intended that it be so used. This liability is limited to a foreseeable person or limited class of persons for whom the information was intended, either directly or indirectly.

*Robert & Co. Assocs. v. Rhodes-Haverty Partnership*, 300 S.E.2d 503 (Ga. 1983). The plaintiffs allege that "Chevron misrepresented the quality of the vent pipe at issue in its product advertising." *Plaintiff's Submission* at 19. The counts which embody the plaintiffs' misrepresentation action are Count III in CV-96-N-0823-W (Fraudulent Suppression); Count

III in CV-96-N-453-W (Fraudulent Suppression); Count III in CV-97-N-168-W (Fraudulent Suppression); and Count V in CV-97-N-168-W (Intentional, Reckless or Negligent Misrepresentation). These claims fall within the misrepresentation exception and should not be dismissed, even to the extent they are brought to redress purely economic injury.

### iv.    Post-Sale Failure to Warn

The plaintiffs last contend that the economic loss rule contains a post-sale failure to warn exception. *Plaintiff's Submission* at 19. The only case which the plaintiffs cite in support of their proposition is *Miller Indus., Inc. v. Caterpillar Tractor Co.*, 733 F.2d 813 (11th Cir. 1984). However, that case was decided under maritime law. The Eleventh Circuit, discussing the economic loss rule in *Miller* said:

> [A]s a general rule, courts have denied recovery for negligence where no physical damage has occurred. In the products liability context where privity exists between the plaintiff-buyer and defendant-seller, the rule's primary purpose is to preserve the operation of warranties where the plaintiff's claim is loss of bargain.

*Id.* at 817. But the court then noted that "this circuit has rejected, at least in the maritime context, such a rigid separation of the law of sales and the law of torts." *Id.* The three judge panel then went on to hold that the district court was not in error in finding that a negligent failure to warn theory could form the basis for liability without being barred by the economic loss rule. *Id.* at 818.

Here Georgia law, not maritime law, governs the plaintiffs' claims. The plaintiff has not cited, nor has the court discovered, any authority from Georgia law allowing a failure to warn theory to proceed outside of the economic loss rule -- regardless of whether it was

post-sale or prior to the sale. Accordingly, the plaintiffs' failure to warn/breach of a continuing duty to warn theories will be dismissed.

### v.     Summary of Economic Loss Rule

The plaintiffs make claims solely for economic losses. Such losses are not compensable in tort unless the plaintiff proceeds under a theory which falls within a recognized exception to the economic loss rule. To the extent the plaintiffs claim damages, purely economic or otherwise, under a misrepresentation theory their action will be allowed. However, Counts I, II and IV in CV-97-N-0168-W; Counts I, II, and IV in CV-96-N-453-W and CV-96-N-823-W; and Counts VI and VII in CV-96-N-453-W are barred by the economic loss rule and will be dismissed.

### e.     Fraud and Suppression -- Chandler

The defendants next argue that Ms. Chandler's fraudulent suppression claim in Count III of her complaint fails to state a claim upon which relief may be granted.[5] They first argue that Ms. Chandler's complaint is deficient because it fails to allege all of the elements of a Georgia fraud claim. The plaintiffs do not contest the inadequacy of the *Chandler* complaint and have requested leave to amend to more adequately state their claims for fraudulent suppression and negligent misrepresentation. The court will grant the plaintiffs leave to amend the complaint in CV-96-N-453-W.

In Count III of both of Ms. Chandler's complaints, she also alleges that the suppression was done "willfully and recklessly." The defendants assert that

---

[5] The defendants argue that the fraud and suppression claims are also barred by the economic loss rule. However, the court is of the opinion that under Georgia law, these causes of action fall within the misrepresentation exception to the rule and that the rule does not apply.

under the allegations of the complaint, plaintiff was at least two steps removed from Chevron in the distribution chain of the . . . pipe. Moreover, under the allegations of the complaint, plaintiff does not allege that she purchased the pipe directly, but rather, alleges that it was installed in her home by a contractor. There is simply no possibility under those allegations that plaintiff could establish a duty on the part of Chevron to make disclosures to the plaintiff or other homeowners similarly situated.

*Chevron's Brief* at 20. However, a "manufacturer's duty to warn is not merely a duty owed to the purchaser but a duty to warn the end user." *White v. W.G.M. Safety Corp.*, 707 F. Supp. 544, 547 (S.D. Ga. 1988), *aff'd*, 891 F.2d 906 (11th Cir. 1989) (citing *Center Chemical Co. v. Parzini*, 218 S.E.2d 580 (Ga. 1975)). The defendants have cited no case law that would suggest this rule would be different in the present circumstance. Accordingly, the plaintiffs' claims of fraudulent suppression will not be dismissed.

### f. Breach of Implied Warranty

The defendants assert that the plaintiffs' breach of implied warranty claims under O.C.G.A. § 11-2-314(2)(c) cannot survive because of lack of privity.[6] Georgia law provides that a plaintiff may not recover for a breach of an implied warranty of merchantability unless he is in privity with the seller. *Keaton v. A.B.C. Drug Co.*, 467 S.E.2d 558, 560-61 (Ga. 1996). Thus, "[i]f a defendant is not the seller to the plaintiff-purchaser, the plaintiff as the ultimate purchaser cannot recover on the implied . . . warranty." *Cobb County Sch. Dist. v. MAT Factory, Inc.*, 452 S.E.2d 140, 145 (Ga. App. 1994). It is undisputed that Chevron sold the pipe to distributors, who then sold the pipe to the contractor, who then installed

---

[6] O.C.G.A. § 11-2-314(2)(c) is that section of Georgia's Commercial Code codifying the implied warranty of merchantability. Although the plaintiffs have not specified which implied warranty theory they sue under, based on the facts of the complaint, this is the only implied warranty theory for which the plaintiffs could maintain a claim.

the pipe. Therefore, the plaintiffs' warranty claims in Count V of CV-96-N-453-W are due to be dismissed.

Inter-City manufactured the ComfortMaker furnace installed in Ms. Chandler's home. The complaint does not allege that it made or sold the Plexvent piping to Ms. Chandler. The plaintiff merely asserts that Inter-City "approved" the use of Plexvent with the ComfortMaker. Accordingly, because Inter-City is not the seller of the product in question, the warranty claims in Count VIII of CV-96-N-453-W are due to be dismissed.

## 4.   **Conclusion**

Based on the foregoing, the Motions to Dismiss will be granted as to Counts I, II and IV in CV-97-N-0168-W; Counts I, II, and IV in CV-96-N-453-W and CV-96-N-823-W; and Counts V, VI, VII, and VIII in CV-96-N-453-W. These counts will be dismissed with prejudice. The motions to dismiss will otherwise be denied. Ms. Chandler's request for leave to amend Count III of her complaints will be granted.

Done, this _18 th_ of July, 1997.

Edwin L. Nelson
United States District Judge